Good morning, Your Honors. This is Eunice Lee from the Federal Defenders for Appellant Brian Newton. Your Honors, a 19-year sentence for Brian Newton's child pornography conviction, which was an offense that involved no physical contact with minors, is unreasonable in light of the circumstances of this case, including the fact that the Probation Department recommended a 15-year sentence, and the plea agreement estimated that same 15-year sentence. In addition, the 19-year sentence was unnecessary for deterrence and represented an extreme increase over Mr. Newton's sentence for his prior conviction, for which he received a sentence of only 90 days. Now, while this was definitely a very serious offense, the 19-year sentence imposed was but Mr. Newton engaged in chatting, and in fact, with two dozen individuals he believed were minors, and in fact, he sent them pictures of himself and his generals. Yes, I'm sorry, Your Honor. I meant to specify no physical contact with any minors. No, I understood that, but it's still, as the mandatory minimum 15-year sentence was already an extremely lengthy sentence, and so the idea that these conversations and sex exchanges with minors, certainly that's serious, and to the extent that that could justify something above the 15-year minimum, an increase of four additional years for this type of conduct, which again is not meeting with individuals, not attempting to meet with individuals, it's not just of the level that justifies such an increase of an already lengthy sentence, and again, looking at sort of... Ms. Lee, this is Judge Carney. You don't contest, though, that PSR's recommendation of the five-level enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor, right? I mean, that was a part of the agreement, but you have not challenged that, the application of that enhancement, is that right? That's correct. That's not being challenged. Okay. Oh, I'm sorry. Follow up, if you would. So I was... I wondered what, if you could explain, and I'll ask the government as well, though, what happened during the back and forth between the plea agreement and the calculation there that didn't include the pattern enhancement, and going from a... what seemed to be a likely 15-year mandatory minimum recommendation, and then the 240-month recommendation later. Was there something not apparent from the record that of the five-level enhancement that was appropriate, given the pattern? Yes. It's actually... there appears not to have been any new information, and so it's actually very unclear as to what precipitated the government's change in position. Specifically, in the plea agreement, which did have this estimate of a 15-year sentence, the plea agreement specifically noted the contact with minors, the online texts and chats that the PSR later used to include the five-level enhancement. So the government was aware of that conduct and specifically noted in the plea agreement that that conduct could constitute a pattern of sexual exploitation relevant to that particular guideline. Nonetheless, the plea agreement did not include that enhancement, and so it's not clear to me why there was a change and why, when the PSR included this enhancement, the government not only adopted the new guideline range but then advocated for a 20-year sentence above what was... But you're not arguing, are you, that the government acted in bad faith or that there was a breach of the plea agreement? Is that correct? I'm not... I'm certainly not arguing that there was a breach in the plea agreement, and I don't know whether it's bad faith or not, but it doesn't seem that the decision to seek such a significant greater sentence at the time of sentencing was justified... certainly was not justified by any information that the government did not have at the time of the plea agreement. Okay, well, I'll ask the government about that, too, then. Yes, and maybe you could address... because ultimately, you're talking... your appeal is based on an argument of substantive unreasonableness, and yet we have a very deferential review standard, and Judge Bianco went through the factors and facts here very carefully. Maybe you could address your substantive unreasonableness argument. Certainly. I mean, the recommendation from probation and then what was in the plea agreement, it's... I'm bringing that up largely to suggest a context for this, and with probation in particular, given that the probation department is very, you know, they presented a very thorough and detailed telling of the facts of this offense and of the prior offense, but nonetheless felt that this, you know, this 15-year sentence was appropriate, I think is significant in this context, and with regard to, again, the significance or the weight that the district court gave to, I think, the conduct of the text exchanges with the teenagers, certainly, again, that's relevant conduct and that can be considered, but the idea that we're going from a 15-year sentence here, again, which was, you know, a 7,000 percent increase over Mr. Newton's only prior offense, which he received a sentence of 90 days, that that goes well beyond what would be necessary for deterrence and sort of over-represents the nature of his prior criminal history. Did the PSR and the record here also reflect a failure to participate in treatment programs, a lack of motivation to find employment? I mean, the first, the 90-day sentence was, you know, imposed by the state with a period of probation, but at every instance, it seemed that your client was not particularly interested in participating in programs that would help him conquer his malady. Was that fair for the district court to take into consideration in imposing the sentence he did, being concerned for the safety of the community? Well, certainly, his, Mr. Newton's prior experience on his probation with treatment, it was problematic in some ways, and he was not entirely successful with that, and certainly, that's appropriate for the district court to consider that, to consider all of the factors in the case, but the question is, is that appropriate to the extent of saying, well, had this prior conviction, you were unsuccessful for that period of time, you served 90 days, now you're going to get 19 years. I mean, that's the question of sort of what is sufficient, but not greater than necessary, and a sentence of 19 years is greater than necessary to achieve goals, certainly of deterrence, but certainly as well in expressing what is, you know, the seriousness of it. Attorney, you have one minute, by the way. Okay. Attorney Lee, this is Judge Dooley. Is it your position that any sentence above the mandatory minimum on the facts of this record would be substantively unreasonable? Judge, I don't know that I would say any sentence above the 15 years is unreasonable. There is certainly an argument that could be made that something above the minimum was appropriate, and I don't know that I would necessarily dispute anything above the minimum. I do, however, believe that the 15 years is very lengthy, and 19 years certainly is unreasonable in the context of this case and the circumstances here, and as I noted again, it's the idea of, is this sentence sufficient but not greater than necessary, and given the circumstances, given sort of the recognition of the probation department of sort of what the appropriate range was, and given Mr. Newton's background and his prior offense, a 19-year sentence in this case is substantively unreasonable. All right. Thank you. You have some rebuttal time. We'll hear from the government. Good morning, Your Honors. Assistant United States Attorney Michael Maffei on behalf of the government in this case. To start out, the judgment of the District Court should be affirmed because the sentence is substantively unreasonable. First, just to address Judge Carney's question regarding sort of the agreement, there was never any agreement in place or any language put into the agreement that would suggest in any way that the government was going to recommend the mandatory minimum sentence for Mr. Newton. There was nothing— No, Mr. Maffei, I mean, it's not been claimed that you reached the agreement, that the government reached the agreement or acted in bad faith so far as I can tell. Nonetheless, the five-year discrepancy is still startling. Don't you agree? Your Honor, respectfully, I disagree. I think the agreement itself, the government did not indicate— If that's so, what purpose did the numbers set forth and the ranges set forth in the agreement serve? I mean, I understood that under appropriate and justifiable under the guidelines and so on, and then to come back later with arguing for five years above the higher range that was suggested in the agreement without any new facts coming to light strikes me as very concerning. Well, Your Honor, again, the defendant was clearly on notice of those chats. As counsel pointed out, that information was put into the agreement. Granted, there was an error in the estimate and how it would be calculated by probation. No one was seeking to hide that information from the defendant. And at the end of the day— I'm sorry, and you all just overlooked the possible application of the pattern. Is that right? Pattern enhancement? Yes, it was an error in the estimate. And ultimately, Judge, even with the estimate that was in there, the government never indicated to the defendant, as they have in other cases, that they would seek a guideline sentence or wouldn't move for an upward departure because Mr. Newton's— Excuse me. So if you had come in and asked for 30 years, I mean, the statutory maximum was 40, I think. If you had come in and asked for 40, then you would still say, I have no basis to question the discrepancy? No, Judge. I understand the court's concerns, but I think given everything in this case, the government didn't then use the guidelines as a sword and ask for the guideline sentence and insist upon that. We asked for a sentence that we determined based upon Mr. Newton's particular conduct was appropriate. Although his first sentence was only 90 days, as the district court noted, his danger was increasing. This was someone who was active. And I know it's noted in the PSR that Mr. Newton, although was never hands-on, as my opposing counsel has stated, he did actually tell the agents, and it was noted in the PSR, that there was an 85% chance he would never act on that. He himself was conceding that he would, in certain instances, have felt the desire to act on that, to contact a minor in person. That's an increasing danger to the community, and that is something the government had to take very seriously in this case, that he was becoming more serious and more active as a— Those statements came to light in the context of preparing the PSR, so after the plea agreement was entered into, is that right? No, those statements were aware to the parties all along. So once again, I was struck by the plea agreement, which seems to be a suggestion still, that the government would advocate for something at the mandatory minimum, or certainly within the range that's been calculated, and then— You don't see any basis for Mr. Newton to feel misled at all, I take it? No, Your Honor, and I think Mr. Newton himself didn't feel misled at the time. There was no objection to this below, no claim that the government breached the plea agreement or that did anything that violated his expectations. From the face of the agreement, if Mr. Newton was to turn to defense counsel and say, what type of sentence can the government ask for, the answer, based upon the four corners of the document, would have been, well, they can ask for more than the mandatory minimum, whatever they feel is appropriate, and that's exactly what occurred here. I don't think the government did anything untoward, or there's no evidence of bad faith. We didn't increase an appellate waiver in an effort to entrap him. We didn't even end up asking for a guideline sentence, and I think consistent with what the district court did, we took into account all the factors that were present in Mr. Newton's case and asked for a sentence that was below the guidelines but above the mandatory minimum, and we had removed from the agreement, again, all the language that would bind us to or indicate to the defendant that we were adopting the guidelines estimate. So from there, another point of counsel's argument was that the court put undue weight on the dangerousness of Mr. Newton. I think in this case, it was completely appropriate for the court to consider that because as was noted at the guideline factors... Hold on. I'm back on. You're back on. Okay. I apologize. I don't know what happened. Sorry about that. I apologize. I don't know where... No, you didn't do anything. I'm sorry. I'll continue where I was. Essentially, the dangerousness of Mr. Newton and the facts of this case, it's not just that the guidelines that were applied, but the district court was very particular in noting that the guidance of this court in Dorvey and considering those things, but certain factors with Mr. Newton, it wasn't just that he had 600 images. He had 1,000 images and 100 videos. It wasn't just that he had images of violence or... To put it this way, as we laid forth in our brief, he met certain guidelines in two different ways, even though it only gets one enhancement. He was not the run-of-the-mill first-time offender contemplated in Dorvey. He was someone who was in increasing danger when was committing these crimes at the very time when he was supposed to be being treated and corrected for his prior offense. I think the district court appropriately weighed that and especially appropriately weighed the fact that this was an individual who showed no desire or no motivation to rehabilitate themselves. Not only that, the guidelines were not the driving factor in this sentence. The district court made it very clear on two occasions during the sentencing hearing that it believed the 19-year sentence was appropriate regardless of what the guidelines were in this case. Again, that was a sentence below the guidelines. Probation's recommendation in this case, respectfully, the government believed was wrong. This defendant deserved a greater sentence than the mandatory minimum because he wasn't simply a second offender but was a second offender of increasing danger. Defendant Newton's below-guideline sentence here was substantively reasonable. It's not shockingly high given the nature of the conduct and the fact that he's a second offender, and it falls well within the range of permissible decisions for the district court based upon the record before it. If there are no additional questions, the government would rely on our brief for the remainder of our argument. Thank you. Ms. Lee, rebuttal? Yes, briefly, Your Honor. Again, just with respect to the question of dangerousness, we're looking at starting out with a 15-year mandatory minimum that incorporates the prior conviction, which, again, he served 90 days for. In terms of whether or not what kind of danger he represents, I do think the court has to consider the fact that this was not a physical contact offense. With regard to the government's reference to cases like Dorby and how this case is distinguishable from that, I'd note that in Dorby, the defendant in that case was actually arrested while trying to meet a teenager. The government has offered some speculation as to what can be made of his dangerousness. It's a very serious offense, and certainly that's always a relevant consideration, but this record does not necessarily support that. That alone warrants four years above what is already a very lengthy sentence. I think considering that, again, probation was well-versed in all of the circumstances of Mr. Newton's background, recommended a 15-year sentence, and that the government did estimate in its initial plea agreement a sentencing range of 15 years, that certainly provides a relevant context to what is a sentence in this case that's sufficient but not greater than necessary. Here, 19 years does not satisfy that standard. All right. Thank you. The court will reserve decision.